Attorney Carroll, you've reserved two minutes for rebuttal. You may begin when you're ready. Okay. Thank you very much, Your Honor. Our position is that there are so many questions of fact in this matter that it should be remanded for trial to either State or Federal courts. There is the matter in the handcuffing where they claim he was resisting arrest, and we claim that they were trying to put a person with an injured shoulder that had been ripped out of its socket into a handcuff, and, of course, he was writhing in pain. Can I ask you a question? What are the disputes of fact, given that we can watch the incident on video? I mean, isn't this like the Supreme Court's decision in Scott v. Harris where there is an undisputed record, namely the video, and we can make a determination as a matter of law as to whether it meets the relevant legal standard? Yes, that is possible, but you have to realize that the video does have limitations, and it doesn't resolve everything because of that. It's impossible to tell a number of things. You can see my client on the ground, and they're putting the cuffs on, and he's complaining and says they're hurting him and everything, but you can't tell whether it's resisting arrest or whether they're putting an injured shoulder into handcuffs. This is not clear from just what we can see. Can I clarify? In your reply, you seemed to explicitly withdraw the federal excessive force claim. Is that correct? Yes, I did do that, Your Honor. I felt that it was a fifth wheel that opened up the option. The only claims you're appealing are the negligence claim and the battery claim. Is that correct? Yes. That would be the negligence and the battery claim, in particular the battery claim. And you seem to suggest that by virtue of withdrawing the federal claim that the federal courts lack jurisdiction, and it has to be remanded to go to state court, but we have jurisdiction to review the excessive force claim. Right. You can keep it if you want it and send it back if you don't. Okay. The option of sending it to state court wasn't there as long as the federal claim was there, and battery is plenty good enough to get me, if I win, to get me the money I need for my client, and the fact that he's now completely unemployable. The very central issue. You didn't raise below the withdrawal of the federal claims, right? No, I did not raise that in the trial court. I decided I looked it over. In other words, can you do it now in order to get the state claims sent back or remanded to the state or dispensed without prejudice, even though you didn't seek leave to withdraw the claims below? Or, relatedly, did you argue in summary judgment that if the district court dismissed the federal claims that it should decline supplemental jurisdiction on the state claims and leave those to the state court? Yes. I don't believe I argued the withdrawal in the lower court, Your Honor. I understand. The question that I added was, did you say, if you grant summary judgment to defendants on the federal claim, you should decline supplemental jurisdiction and leave the state law claims to the state court? Did you say that? I don't remember saying that in my brief, Your Honor. I'd have to double-check it, but I don't believe I had that in my brief at the time. Unless Judge Nathan objects, can I ask you to turn to the sanctions question? And, honestly, I'm a little stunned by your briefs to this court. And in light of some of the language in the district court's opinion imposing sanctions, he quotes from a prior oral argument in this court where Judge Wesley literally calls you to task for, you know, the quality of your briefing before this court and including cutting and pasting, including the headnotes from prior decisions. I remember that oral argument very clearly, Your Honor. Okay. So Judge Wesley said you should never do that again, and you said in sum and substance that you would never do that again, and yet you did that again. Did you not? No, I did not. In our briefs here. I don't believe I did that in this brief anywhere. There are headnotes in the brief. I don't believe so. Do you have the brief in front of you? I don't believe I did. If I did, I apologize.  Can I ask, just sort of, did you proofread the brief? Some of it is incomprehensible, candidly, counsel. I proofread it. I'll just take one example, page five, the last full paragraph. It says the plaintiff has lost the use of his left arm permanently in his job as a heavy equipment operator. A-145, et bizarre bizarre. What does bizarre bizarre mean? I don't know. It must have been something else I was working on. I don't understand how any basic proofreading, even a spellcheck would capture bizarre bizarre as a single word. Did you run spellcheck on your brief? I always spellcheck, but it didn't catch those words, and I didn't know it was in there even. Okay, and then page 12. I didn't catch it when I read it when I was preparing even for this even. Page 12, you say Graham V. Connor states, and then the next paragraph begins with bracket star 396, which is clearly the pin site from that case, and then says literally head note eight, head note nine, head note five with an arrow indicating that it was just copied and pasted from Westlaw or whatever platform you were using. I didn't see that in my brief last night, but I'm not sure. I don't know. Respectfully, counsel, I don't understand how you could represent that you read your brief last night and not see that. It's just incomprehensible to me. I have astigmatism and dyslexia, but there was one section there, I remember when I got to it, that was the one I think you're referring to, and I said, oh, okay. But it was there. I didn't catch it. All right. I'm going to say this bluntly, and I mean no disrespect by it, but I think you really have to ask yourself whether given whatever reasons you may have to not be up to the task, you are doing service to your clients by continuing to represent them in this court or in the Northern District of New York. I don't say that lightly, but if you represent that you read the brief last night and didn't see the problems that Judge Nathan and I just pointed to, it suggests that there's a problem and you're not doing right by your client. So whether we have anything to say or do about it, I don't know, but I'm just telling you you may want to think about that. Okay. Got it. All right. Thank you, counsel. You've reserved two minutes for rebuttal. Attorney Law. Good morning. May it please the Court. I came here prepared to argue related to the excessive force claim. It was from my reading of the brief. Well, we may ask questions with respect to that, too. Sure. Ambiguous whether or not that claim was withdrawn on reply. I appreciate that counsel has now clarified that, and that claim is withdrawn. But the standard for battery and the standard for excessive force are basically the same, right? Correct. So I think you should proceed with your argument. Okay. I will. What I am not going to focus on is the sanctions component of the appeal. That has no bearing on my clients, so I will rest on my briefs. I will also highlight that the excessive force claims against Officer Davis and Officer LaSallar are the only claims that remain that are Federal. And as you said, the battery claim is, as the courts have determined, duplicative of that claim. The lower court, quite frankly, and Judge Scullin, came to the correct decision that there were two instances where this particular plaintiff was resisting. He was resisting when he denied to exit the vehicle seven times. When Officer Davis approached, he approached in a calm, collected manner. He asked several questions that you would initiate a conversation with someone that you were pulling over for a VTL violation that was observed. And during that course, he came to the conclusion that Mr. King had been drinking alcohol. He collectively asked him on a number of occasions to step out of the vehicle to do a field sobriety test. Mr. as this counsel admits, Mr. King was trying to talk his way out of the ticket. And at that point in time, backup was called. Now, backup was the marked vehicle of the Potsdam Police Department, Sergeant Gage Schultz, and then also at the time, Officer LaSallar. Can you jump to the second thing? Because I'm guessing it's the order to remove his hand from his chest pocket. Is that correct?  Yes, and then the second resisting was when they opened the door and when he wasn't coming out of the vehicle on the orders, reaching cross-body from his right hand into his left interior coat pocket, which is seen on the body-worn cameras, and at which time the officers repeatedly said, don't reach, keep your hands visible, don't reach in your coat, get out of the vehicle, get out of the vehicle. I'm not going to tell you again, get out of the vehicle. Now, I recognize that we're talking about split seconds here, and maybe that is, you know, all the difference, but doesn't he actually then comply and remove his hand from his chest before the officers yank him from the car? That is to say, technically speaking, didn't he comply with their order and at the split second that the officers acted, he is no longer reaching in his pocket? I saw no compliance in that video. I saw his hand there. Potentially it looked like his hand was moving, but I still saw that hand in the video. And as the plaintiff stated in his own testimony, the officers didn't know what was in that jacket pocket. Now we understand what he gave testimony, you know, years, months later. So if the video showed that he had removed his hand moments before the officers yanked him from the car, would you agree that that is sufficient to get to a jury? I would agree that if he had removed his hands and kept his hands visible as the officers were requesting that he did or giving lawful directives that he should have followed, that the need to withdraw him from that or take him out of the vehicle would no longer exist. So that didn't happen here, though. What happened was you had Officer Davis speaking with this individual for more than two minutes, asking him cordially, calmly, trying to de-escalate and have this individual step out of the vehicle so he could do a field sobriety test. It was only when the other officers arrived and Officer Davis opened the door. I acknowledge all that. My question is simply if the video shows that at the precise moment that the officers actually used force, pulled him from the car, he had removed his hand from his jacket pocket and his hands were visible, you would agree that that is sufficient to go to a jury? Yes, but that's not the case here. Yes. You had no sight of what was in his hands, if he had any type of weapon or what he was grabbing in his vehicle. So that is not the case here. But, yes, I would agree with you under that hypothetical. If the officers see both hands, there's no need or reason to extract him in that manner from the vehicle, because there is no reasonable way that an officer could think that he or she was in danger at that point in time, or at least in immediate danger. Can I ask your view as to whether it's appropriate to withdraw the Federal claims at this stage on the theory that we should then not resolve those and remand for dismissal, I presume remand for dismissal without prejudice, to allow the State claims to proceed? Right. I mean, I believe, you know, this Court under U.S.C. 20 — 28 U.S.C. 1367c3 can make a determination, and the lower court did and elected supplemental jurisdiction. And when it did so, it looked at — Well, you say it did, but the district court didn't actually even address the question of whether it was appropriate to exercise supplemental jurisdiction, correct? Correct. But what I'm getting at is the district court has already made determinations on the State law claims. Was that error? In other words, having dismissed the Federal 1983 claim, should the district court not have then paused to say, I'm going to exercise supplemental jurisdiction and here's why, or I shouldn't exercise supplemental jurisdiction? And I have a follow-up question about the negligence claim on that score, but let me start there. Okay. Didn't the district court err by not engaging with that analysis? I don't believe so. I believe the district court had enough evidence that it viewed on the Federal claims to make a determination on those State law claims, and I think it properly exercised supplemental jurisdiction on those State law claims. So let me then point you or direct you to the negligence claim. I mean, I think there's a stronger argument on that score with respect to Battery because, as we discussed, the standard is the same, but that's not true for negligence, correct? Correct. That's a separate analysis. Correct. The district court dismissed that claim without considering whether there's an unsettled State law issue and that issue should be left to the State courts, correct? It did. It did, but it also made determinations that the way that the negligence claim was pled was improper. So the negligence claim was pled. And why is that? I mean, a plaintiff is entitled under Rule 8 to plead alternative theories and it's indeed a trial to argue alternative theories to the jury. Why wasn't the plaintiff here entitled to say this is intentional misconduct and use of excessive force, and in the alternative we think to the extent that it was negligent, that it's negligence. My recollection of that portion of the court's decision in order was that in the negligence section or the cause of action brought by plaintiff for negligence, he focused on intent. And then that wasn't the, that isn't a proper element of negligence. So the court looked at the drafting of the complaint and I think honestly, respectfully to Mr. Carroll, he had three opportunities to revise his complaint where now the operative complaint is the third amended complaint. And perhaps the court took that under consideration. I can't answer that for Judge Stahl. But can you point me to where in the complaint that is the case? I mean, the district court said plaintiff's allegations of negligence, quote, are only consistent with intentional or reckless conduct, unquote. If the officer defendants were not acting as reasonable officers should, i.e. using excessive force, they could only be liable for intentional torts, not negligence. Why? I can't answer why Judge Stahl made that determination. Am I not wrong that the New York courts have allowed negligence claims in scenarios like this? That is where police officers have used allegedly excessive force? They have allowed? They have. And as we raised in our brief, but the court didn't reach because it found unnecessary, they are also entitled to immunity defenses. And we raised that a little bit. Maybe. But the district court didn't reach that. Correct. Can you point us to any case on appeal where this court in the first instance has ruled on immunity grounds rather than remanding that if there's? I have not. Am I wrong? Do you recall whether opposing counsel sought for the district, if the federal claims were dismissed, sought to have the district court not exercise supplemental jurisdiction? Well, let's talk about the timing here, because the withdrawal of the federal claims, there were a number of withdrawals, voluntary withdrawals, before the federal court, before Judge Stahl. Those were the inappropriate naming of the Potsdam Police Department, the Monell claim. He withdrew the Monell claim, right? And then he also discontinued the all claims against Sergeant A. Schultz. So what the court below, Judge Scullin considered, was the excessive force claim against Officer LaSalla and Officer Davis. It wasn't until this court that plaintiff clarified or inferred and then clarified on reply that he was withdrawing the federal claims. So the federal claims were still before Judge Scullin when he reached that decision.  I think the question is, in the summary judgment briefing, did counsel say if you dismiss the federal claims, you should decline to exercise supplemental jurisdiction over the State law claims and leave those to the State courts? My recollection was that he did. That he did. He did request that. You know, again. And I'm looking at the third amended complaint. I take it that's the operative complaint?  And this is page 32 of the appendix, the negligence claim. I mean, the allegations in the complaint are not only consistent with intentional conduct. In other words, there are allegations that the defendants failed to exercise ordinary care and that a reasonably prudent person would have used under the circumstances. Why, I don't quite understand the theory by which that's not a viable claim given that New York courts have permitted claims of negligence in cases involving claims of excessive use of force. I'm not saying it's not a viable claim. I'm saying there's a defense for that claim, which was raised to the federal court, which was not reached. So if we remand back to State court. So you're not defending it on the grounds that it was that you won on below? No. No. He didn't reach it. I can't. I can't make that argument. Okay. And in your brief, you seem to argue that you take issue with the arguments that counsel makes based on the injuries that his client suffered. Is it not longstanding, well-established law that, I mean, yes, it's the use of force that's relevant, not the injury per se, but are there not legion of cases saying that the injury can shed light on whether the use of force was reasonable? Yes, the injury can, but in this case, the lower court limited the mechanism of the injury to the extraction from the vehicle. The extraction and then also making the contact with the pavement. That has already been decided. That was decided by Judge Magistrate, Magistrate Judge Daniel Stewart, when. I don't understand. What do you mean by that? Mr. King's testimony was the injury occurred when they pulled his arm from the socket, right? So then that was his testimony. That was limited to the extraction from the vehicle. But then there was other testimony that indicated that the true injury occurred with the handcuffing process. I'm saying that that was not before the court below. That was limited to the extraction of the vehicle, from the vehicle. So most of counsel's arguments, my recollection was, the injury occurred when he was handcuffed. He was claimed that his arm was beaten. That is nowhere in the body-worn camera video. You can't see that. So truly, the alleged injury was just pulling the gentleman from the vehicle. I don't know how an officer, under those circumstances, would have removed in any other manner someone from a vehicle that was reaching cross-bodied into a concealed area, other than grabbing their arms and pulling them from the vehicle. I don't see how that could not be reasonable. So let me follow up on the question I asked, and I'm not sure you answered, and then I have a question about what you just said. My point is that there are cases that say that, yes, well, it's the quantum of force that is used that is the relevant question for purposes of an excessive force claim, that you can look to the nature of the injury because that sheds light on whether the force was reasonable. Correct? Correct, yes. I agree with that. So maybe this gets to the second question. Here, my understanding is the plaintiff has suffered a dislocated shoulder and has not been able to work since this incident. That is to say that there are pretty significant injuries. Why wouldn't that have some bearing on whether the use of force here was reasonable? And if your answer is that it has to do with the extraction versus the handcuffing, can you explain that? I don't understand why a jury would have to parse it that way. Because the extraction from the vehicle is the only thing that's at issue here. He claimed that he was extracted from the vehicle and that pulled his arm from the socket. Then he has testimony, and the record is clear about that, that the injury didn't occur from the extraction. It occurred from the handcuffing. Doesn't that suggest that there is an issue of fact as to how and when the injury occurred and couldn't a jury then, I mean, how do you grant summary judgment where there's that kind of lack of clarity? Well, counsel below limited the mechanism of the injury and did not appeal, stated on the record in open court that the injury occurred from being pulled from the vehicle. Now, the theory of liability has changed. Where is that in the record? That is not in the record. That was at a prior conference before Magistrate Judge Stewart. But there is an order, and I believe that that docket number is 137 below. So that is a ruling on counsel's attempt to file a late expert disclosure for an amnesia expert to discuss and another expert to discuss the injuries that he suffered and his attempt to, again, replead the complaint. So during that hearing. That's the noseworthy issue? Yes. During that hearing, Magistrate Judge Hummel, excuse me, Magistrate Judge Stewart heard from the parties and issued a determination, which is 137 below, that the only claim, the only mechanism of injury is being pulled from the vehicle. So my argument was the officers could not have pulled this individual from the vehicle any other way, that the injury that occurred once he was brought to the prone position on the pavement was from the handcuffing. That's no longer at issue here. He didn't appeal that. So the issue is simply pulling the individual from the vehicle. You're saying he didn't object to the magistrate judge's limitation? Correct. There was no appeal to that. He didn't object to the district court? Correct. To the extent that the argument now is that there are disputed issues of fact, you're saying you can't look to evidence of injury that you say occurred after the extraction? Correct. Correct. It's limited to the extraction. The court below, that has never been appealed. That has never been challenged. Okay? So the injury by . . . To put it differently, the excessive force or battery claim, since the excessive force has now been withdrawn, rises or falls on whether the extraction was a reasonable use of force. Correct.  Yes. And through the viewing of the body-worn camera video, I think I cannot imagine a more clear example that removing an individual who has refused to exit the vehicle, who is reaching cross-bodied into a concealed element of his jacket, doesn't have the ability . . . the officers are acting in an unreasonable matter or objectively unreasonable matter by extracting him. I think there is no case law that would support that. Thank you, counsel. Thank you. Attorney Carroll, you have two minutes for rebuttal. Let me clear this up. Our position is that he was injured in extraction the first time. Then after he has the injury, they put him in the handcuffs, and that aggravated the preexisting injury. That is what my doctor said, and that is our position. And what's your answer to counsel's argument that by not objecting or appealing from docket number 137 that you've limited it to just the extraction? I've filed a notice of appeal on everything. Did you object to the extent that 137 is an order from the magistrate judge limiting evidence of injury to the extraction? Did you object with the district court as to that conclusion? And I haven't looked at it, so I don't know what exactly is it. I don't remember them raising it in their papers, and I have not. It's in a decision that wasn't relevant to the magistrate or anything else, and it's Judge Scullin that has made the final opinion. I don't recollect anything on that one way or the other. My doctor opinion in the record is that he was injured in the extraction, and then when they went to put the cuffs on him, it aggravated it. He had to pull the injured shoulder back around like that, and that made it even worse. Additionally, on the resisting arrest with the hands, we stand just like you said. The video is good enough. You can see it clearly in the video that his hand is right here and not there in compliance with the police orders of keep your hands visible. His left hand on the wheel, and you can see both hands clearly in the video. And I don't know where they get a different opinion of that. As for the state of mind versus intent versus negligence, it's an open and shut question of fact in the state courts because they can't tell the state of mind. All right. Thank you, counsel. Thank you. We will take the matter under advisement.